UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Benjamin Zarn,                                    Civil File No. 22-cv-01756 (MJD/DJF)

            Plaintiff,

    vs.                                           **MEMORANDUM OF LAW
                                                  IN SUPPORT OF DEFENDANT'S
                                                  MOTION FOR SUMMARY
Minnesota Department of Human Services,           JUDGMENT**

            Defendant.

## INTRODUCTION

During the coronavirus pandemic, the Minnesota Department of Human Services implemented measures to protect its patients and employees. One measure was the Covid-19 Vaccination and Testing Policy ("the Policy") which allowed for employees who could not show proof of vaccination to participate in weekly tests to determine if they have the coronavirus. Mr. Benjamin Lee Zarn ("Plaintiff") was and continues to be employed by DHS. Plaintiff is Catholic and opposed the Policy because of his religious beliefs. Despite this stance, Plaintiff neither communicated his beliefs nor requested an accommodation to the Policy from DHS. His lawsuit seeks remedies for refusal of requests he never made. He also asserts that the weekly tests were unlawful examinations into his disability status, despite the fact that the Covid-19 tests did not elicit information about disabilities.

## STATEMENT OF THE ISSUES

1.    Do the undisputed facts in the record show that Plaintiff was not discriminated against because of his religious beliefs where there is no evidence that he requested a religious accommodation from his employer?

2.      Do the undisputed facts in the record show that Defendant's Covid-19 Testing was not an unlawful medical examination under the ADA where the testing did not elicit information about a disability?

## STATEMENT OF THE RECORD

1.      Transcript of Deposition of Benjamin Lee Zarn (cited herein as "Zarn Dep. _"), cited excerpts of which are collectively annexed as Exhibit A to the Declaration of Ian Taylor, Jr., in Support of Defendants' Motion for Summary Judgment ("Taylor Decl."):

2.      Transcript of the Deposition of Robbie Bach (cited herein as "Bach Dep. _"),cited excerpts of which are collectively annexed as Exhibit B to the Declaration of Ian Taylor, Jr., in Support of Defendants' Motion for Summary Judgment ("Taylor Decl").

3.      Transcript of the Deposition of Ryan Cates (cited herein as "Cates Dep._") cited excerpts of which are collectively annexed as Exhibit C to the Declaration of Ian Taylor, Jr., in Support of Defendants' Motion for Summary Judgment ("Taylor Decl.").

4.      Transcript of Deposition of Patrick Paterson (cited herein as "Patterson Dep._"), cited excerpts of which are collectively annexed as Exhibit D to the Declaration of Ian Taylor, Jr., in Support of Defendants' Motion for Summary Judgment ("Taylor Decl").

5.      Transcript of the Deposition of Alli Kuhlman (cited herein as "Kuhlman Dep. _"), cited excerpts of which are collectively annexed as Exhibit E to the Declaration of Ian Taylor, Jr., in Support of Defendants' Motion for Summary Judgment ("Taylor Decl.").

6.      Exhibits F-P to the Taylor Decl.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff is a Forensic Support Specialist at the St. Peter Regional Treatment Center. (Zarn Dep. 10.) St. Peter Regional Treatment Center is a hospital that receives funding from the State of Minnesota. (*Id.*) He has been employed by the Minnesota Department of Human Services ("DHS") since August 8, 2018. (Exhibit F; Zarn Dep. 10.) Plaintiff's position requires that he interact directly with patients. (*Id.*)  His main responsibilities are to ensure a safe environment for all the patients and to make sure they take their medication. (*Id.*) He serves them meals and maintains security. (*Id.*) His interactions with patients sometimes involve being within six feet of them physically, including sitting at a table, or occasionally holding them. (Zarn Dep. 14-15.)

In September of 2021, in response to the Covid-19 pandemic, Minnesota Management and Budget instituted the Policy, impacting DHS employees. (Exhibit G.) The objective of the Policy was to prevent the transmission of Covid-19 by requiring proof of vaccination status for agency staff who are assigned to work at the workplace. (*Id.*) The Policy was drafted following the tragedies of the pandemic including the thousands of Minnesotan deaths that had resulted from Covid-19. (*Id.*) The Policy encouraged but did not require employees to get vaccinated. (*Id.*)  However, employees who worked in the workplace and did not submit proof of full Covid-19 vaccination were required to test for Covid-19 at least weekly. (*Id.*) During the pandemic, Plaintiff was unconcerned about Covid-19 virus affecting his personal safety. (Zarn Dep. 27-28). He watched the news, googled Centers for Disease Control and Prevention ("CDC") statistics and concluded the coronavirus was a disease "more like a cold or flu." (*Id.* 28-29.)

Plaintiff identifies as a believer in Catholicism. (Zarn Depo 81-84.) He believes that his conscience is the voice that everyone has inside that tells people what is right and wrong. (*Id.* at 85.) He does not question his conscience because he believes that his conscience is in line with the law of God. (*Id.*) He believes his conscience is always correct. (Zarn Dep. 91-94.)

Plaintiff testified that his conscience told him that he should not take any Covid-19 vaccination. (Zarn Dep. 48-50.) His conscience told Plaintiff that *he* got to dictate what was put in his own body. (*Id.*) He also felt he had nothing to gain from getting a vaccine because he had natural immunity, and because his body is not his, he must respect his bodily autonomy in regard to his creator. (*Id.*) His belief in natural immunity was informed through what he understood about science and what this moral conscience agreed was sufficient. (*Id.*)

Plaintiff also testified that his conscience told him that he should not submit to DHS's weekly testing. (Zarn Dep. 60-61.) The justification for his conscience telling him these things is two-fold: 1) Covid vaccines "[do not] stop transmission"; and 2) the testing "segregate[s]" one group from another in reliance on "faulty science." (*Id.*) Despite his objections, he signed the Covid-19 Testing Consent Form on September 11, 2021. (Zarn Dep. 78.)

Plaintiff signed a consent form agreeing to weekly testing but testified that he did not sign it willingly. (Zarn Dep. 37-38; Exhibit J.) He felt he could refuse to sign and be terminated or be discriminated against and keep his job. (Zarn Dep. 39.) He acknowledged

that the consent form only referred to termination as a possibility but maintains that he was forced to sign the form. (Zarn Dep. 41.)

He took part in a weekly saliva test which involved spitting into a small container filled with liquid and submitting it for analysis. (Zarn Dep. 45.)

Plaintiff also testified that Defendant discriminated against him by deciding to pay employees who were fully vaccinated "Covid Pay," and others who did not submit their vaccination status were refused pay, referring to DHS' policy for Use of Paid Administrative Leave for Covid-19 Isolation. (Zarn Dep. 70-71.) He alleges this was discrimination because it violated his religious moral conscience. Plaintiff never requested Covid Pay himself. (Zarn Dep. 70-72.) He finally alleges that those who were fully vaccinated could remain in the workplace after a high-risk exposure while the unvaccinated were required to leave that area. (Zarn Dep. 70-71.)  He claims this violated his moral conscience because what they were doing was morally wrong according to his own conscience. (Zarn Dep. 70-71.)

Plaintiff failed to request an accommodation for religious beliefs during the relevant time period in the complaint. (Zarn Depo 65-68.) Instead, he sent a Facebook message to Mr. Ryan Cates, his union president. (*Id.*) Mr. Cates understood Plaintiff's inquiry as seeking clarity on the policy regarding weekly testing, not a request for an accommodation. (Cates Dep. 29.) Mr. Cates informed Plaintiff that there was no exception to the weekly testing requirement. (Cates Dep. 25-26.) There is no record of Mr. Zarn expressing a belief to DHS that being vaccinated or being tested was in conflict with his faith. (*See* Bach Depo 61, 73-74, 75; Patterson Depo 16-17; Kuhlman Dep. 10; Zarn Dep. 62-65.)

The Policy was rescinded on May 24, 2022. (Taylor Decl. Ex. I.) DHS no longer requires weekly testing for Plaintiff as of that date. (*Id.*)

Plaintiff filed a Charge of Discrimination alleging discrimination based on religion with the EEOC on March 25, 2022. (Exhibit K.) The nature of his discrimination was holding a religious belief that conflicted with his employers' vaccination and testing requirement. (*Id.*) Plaintiff filed a second Charge of Discrimination alleging discrimination based on the Americans with Disabilities Act of 1990 on May 9, 2022. (Exhibit L.) Both charges were dismissed and Notice of Right to Sue letters were issued on April 12, 2022 and May 16, 2022. (Exhibits O and P.) Plaintiff commenced this lawsuit against DHS on July 11, 2022. (ECF 1.)

## STANDARD

Summary Judgment is appropriate when there are no genuine issues of material fact, and the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could lead a reasonable jury to return a verdict for either party. *Anderson*, 477 U.S. at 248.

## ARGUMENT

## I. PLAINTIFF FAILED TO EXHAUST ADMINISTRATIVE REMEDIES AS TO HIS TITLE VII CLAIM REGARDING "COVID PAY."

Plaintiff failed to exhaust his administrative remedies as to his Title VII claim that the DHS discriminated against him based on his religion by its decision to pay employees who were fully vaccinated "Covid Pay," while others who did not submit their vaccination

status were refused pay. (Zarn Dep. 70-71.) Plaintiff asserts that this practice discriminated against him because it violated his "moral conscience." (*Id.*)

Plaintiff failed to mention alleged "Covid Pay" discrimination to the EEOC as a basis for his Title VII charge, alleging only that he had a religious objection to the vaccination and testing requirement. (Exhibit K.) Plaintiff has not exhausted his remedies and his Title VII claim about "Covid Pay" must be dismissed.

Plaintiff told the EEOC that he requested an accommodation from the Policy's "vaccine mandate" because he "sincerely [held] a religious belief that [conflicted] with [his] employer's vaccine requirement." (*Id.*)

The entirety of Plaintiff's Title VII EEOC charge is as follows:

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|---|
| | Earliest | Latest |
| Religion | 09/14/2021 | 03/18/2022 |
| | Continuing Action | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I. I have been employed of the respondent for 3 and a half years. My position is Forensic Support Specialist. On or about September 14, I was notified by my employer that it would be requiring all employees to be fully vaccinated for Covid-19 or be subjected to weekly Covid-19 testing from that week forward. I sincerely hold a religious belief that conflicts with my employers vaccination and testing requirement. During my employment, I notified my employer of my religious belief and requested a religious accommodation to Respondents Covid-19 vaccination and testing mandate, which was denied. II. I believe I have been discriminated against because of my religion, Catholic, in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Mr. Benjamin L. Zarn** **03/25/2022** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Charging Party Signature* | |

(*See* Exhibit K.)

Plaintiff did not allege in his first EEOC charge that he requested a religious accommodation for "Covid Pay", that he was denied a religious accommodation for "Covid Pay," or that he claimed such a denial violated Title VII. (*Id.*) Plaintiff's second EEOC charge also neglects to allege anything related to "Covid Pay." (Exhibit L.) Instead, the claimant alleges an ADA violation saying he was denied a reasonable accommodation to the "vaccination and weekly testing mandate." (*Id.*) Plaintiff argued that both the unvaccinated and vaccinated can transmit COVID-19, therefore the testing alternative is discriminatory, and the ADA prohibits discrimination as to medical inquiries. (*Id.*)

Before commencing a district court action under Title VII, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. *Weatherly v. Ford Motor Co.*, 994 F.3d 940, 944 (8th Cir. 2021). Exhaustion "is central to Title VII's statutory scheme because it provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir. 1994). Accordingly, courts bar complaints that plead allegations "outside the ambit of the predicate EEOC charge," to avoid circumscribing "the EEOC's investigatory and conciliatory role, as well as deprive the charged party of the notice of the charge." *Id.* at 223. "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC." *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2016) (quotation omitted); *Wallin v. Minn. Dep't of Corrections*, 153 F.3d 681, 688 (8th Cir.1998), cert. denied, 526 U.S. 1004 (1999) ("Allowing a complaint to encompass

8

allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge."). Therefore, courts "will consider those claims specifically raised and those that are 'like or reasonably related to the administrative charges that were timely brought.'" *Id.* (quoting *Wedow v. City of Kansas City*, 442 F.3d 661, 672 (8th Cir. 2006)); *see also Parisi v. Boeing Co.*, 400 F.3d 583, 585 (8th Cir. 2005) ("The claims of employment discrimination in the complaint may be as broad as the scope of the EEOC investigation which reasonably could be expected to result from the administrative charge.").

The charge must be sufficiently precise to identify the parties, and to describe generally the action or practices challenged. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). For example, exhaustion as to claims about different forms of unlawful conduct requires a claimant to individually exhaust "each alleged unlawful employment practice." *Richter v. Ad. Auto Parts*, *Inc.*, 686 F.3d 847, 851 (8th Cir. 2012). The United States Supreme Court has enumerated several such unlawful practices that, accordingly, must each be individually charged before the EEOC in order to satisfy exhaustion requirements. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (listing termination, failure to promote, denial of transfer, refusal to hire, and hostile environments as distinct examples of unlawful discrimination).

The same is true for exhaustion as to claims that allege unlawful conduct on the basis of distinct protected categories. As relevant here, Title VII and the ADA separately enumerate protected categories. 42 U.S.C. § 2000e-2(a) (Title VII); 42 U.S.C. §§

12112(b)(5), 12111(8) (ADA). Each enumerated category that these federal laws protect, therefore, provides a basis for a "distinct" statutory claim. *Sallis v. Univ. of Minn.*, 322 F. Supp. 2d 999, 1004 n.1 (D. Minn. 2004). For this reason, "the exhaustion of remedies with regard to one [protected category] does not create a right to sue for the other." *Id.* If the administrative charge and the complaint allege discrimination based on different immutable characteristics, the claims are not reasonably related. *Id.*

Nothing in the Title VII charge reasonably put DHS on notice that Plaintiff claimed it discriminated against him on the basis of his religion regarding "Covid Pay." As his Title VII charge mentions only his religious objection to the COVID vaccine and testing requirement and an alleged denial of accommodation to the "vaccine mandate," the scope of any EEOC investigation and conciliation effort would be regarding vaccination and testing.

Further, Plaintiff's ADA charge is not reasonably related to his Title VII charge. Plaintiff's ADA and Title VII claims are analytically distinct, involving separate protected statutes, separate elements, and necessarily separate analyses.

Because Plaintiff did not exhaust his administrative remedies as to his Title VII claim with regard to the DHS' policy on the Use of Paid Administrative Leave for Covid-19 Isolation, it must be dismissed.

## II.    PLAINTIFF'S RELIGIOUS DISCRIMINATION AND FAILURE TO ACCOMMODATE CLAIM (COUNT I) FAILS ON THE MERITS.

In Count I, Plaintiff alleges DHS discriminated against him on the basis of his religion by failing to accommodate his beliefs.  To prevail in a disparate-treatment claim,

a plaintiff need show only that his need for an accommodation was a motivating factor in the employer's decision to impose some sort of adverse action. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). When a plaintiff brings a Title VII religious discrimination claim based on failure to provide reasonable accommodations in the Eighth Circuit, they must establish the three-part prima facie case set forth in *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). Plaintiffs must show (1) they have a bona fide religious belief that conflicts with an employment requirement; (2) they informed the employer of this belief; and (3) they were disciplined for failing to comply with the conflicting requirement. *Id.* (citing *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 65–66 (1986)).

Plaintiff fails to satisfy the *Jones* test because he did not inform the employer of his alleged belief, did not request an accommodation, and was not disciplined, threatened with discipline, or subject to an adverse employment action for beliefs he never expressed.[1]

### A.    Plaintiff Fails to Satisfy the Second *Jones* Factor Because He Did Not Inform the Employer of His Alleged Belief.

Plaintiff's claim also fails because he does not satisfy two factors of the *Jones* prima facie case. First, Plaintiff fails the second *Jones* factor because there is no record of Plaintiff ever informing DHS he had a religious belief conflicting with the Policy, and no record of Plaintiff requesting an accommodation. Plaintiff sent a message to his union contact Mr. Cates seeking clarity on the Covid-19 Vaccination and Testing Policy,

---

[1] Defendant, in arguing against the second and third prongs, reserves its right to contest the first prong and does not concede that Plaintiff has a bona-fide religious belief.

specifically asking if there was any religious exception to the testing. (Cates Dep. 29.) Mr. Cates responded to this request by stating that there were exceptions to the vaccine, but there was no exception to the testing. (*Id.*) However, showing that Plaintiff asked Mr. Cates for clarity on the policy and conveying that he had an objection or needed an accommodation to DHS are not the same thing. Moreover, even if Plaintiff had informed Mr. Cates of his religious belief, Mr. Cates does not work in Human Resources, and is not Plaintiff's supervisor. (Cates Dep. 28.) Mr. Cates testified that he would direct union members to the Equal Opportunity and Access Division for requesting religious accommodations. (Cates Dep. 29.) Plaintiff himself stated that he did not relay his concerns to DHS' human resources department, deciding to "[take] a different route." (Zarn Dep. 63.)

Religious conflicts with employment must be communicated to the employer in order for the employer to provide any accommodation. *Cruzan v. Minneapolis Pub. Sch. Sys.*, 165 F. Supp. 2d 964, 967 (D. Minn. 2001) (finding employee who did not "disclose or discuss the reason" for her objection to employer before it made its decision did not meet the notice requirement), aff'd sub nom. *Cruzan v. Special Sch. Dist. No. 1*, 294 F.3d 981 (8th Cir. 2002), citing *Johnson v. Angelica Uniform Group, Inc.*, 762 F.2d 671, 673 (8th Cir. 1985) (finding employee "failed to provide adequate information about her conflict" to her employer in order to attempt to work out an arrangement satisfactory to both parties); *Chrysler Corp. v. Mann*, 561 F.2d 1282, 1286 (8th Cir. 1977) ("Where, as here, an employee is disinterested in informing his employer of his religious needs and will not attempt to accommodate his own beliefs through the means already available to him or

cooperate with his employer in its conciliatory efforts, he may forego the right to have his beliefs accommodated by his employer."). Where protected status is "not necessarily obvious, as is sometimes the case with religion" the employee must show the employer "was sufficiently aware of the employee's status to have been capable of discriminating based on it." *Hunter v. United Parcel Serv., Inc.*, 697 F.3d 697, 703 (8th Cir. 2012). Title VII "does not supplant" the "mutuality of obligation" inherent in the employer-employee relationship, therefore, an employee has an obligation to provide reasonable notice to his employer of his religious beliefs and request for accommodation. *Chrysler*, 561 F.2d at 1285.

The undisputed facts show Plaintiff failed to identify a connection between his religious beliefs and the testing alternative. Plaintiff cannot show he informed DHS of a conflict between his religious beliefs and the Policy's testing alternative; therefore, he cannot prove a prima facie case of Title VII failure to accommodate. The undisputed facts show that Plaintiff failed to inform DHS of a conflict with his religious belief and the Policy, and failed to request an accommodation to the policy.

Plaintiff clearly fails the second prong of the *Jones* test, because he cannot show that DHS was aware that he needed an accommodation.

## B.    Plaintiff Was Not Disciplined for an Objection that He Never Expressed, and Therefore Fails to Satisfy the Third *Jones* Factor.

Plaintiff's claim also fails for the separate reason that he was not disciplined for an objection he never expressed and therefore he fails to satisfy the third *Jones* factor. As described in Section I(A), Plaintiff never informed his employer of a religious belief

conflicting with the Policy and therefore never raised an objection to which DHS could respond. Further, though he believed DHS' policy for Use of Paid Administrative Leave for Covid-19 Isolation discriminatory, he never sought those benefits for himself. (Zarn Dep. 71-72.) Plaintiff argues that he suffered one adverse employment action: having to test for Covid.[2]  Having to take a test and submit verification of the same is not an adverse employment action.  An adverse employment action is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. *See Muldrow v. St. Louis*, —— U.S. ——, 144 S. Ct. 967, 974, —— L.Ed.2d —— (2024); *see also* 42 U.S.C. § 2000e-2(a); *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024). A plaintiff must plead "some harm respecting an identifiable term or condition of employment." *Muldrow*, at 974.  Plaintiff faced no disadvantage in the terms of his employment; he submitted to tests like everyone else who declined to verify vaccination, faced no disciplinary action, and continued to receive the same hours, compensation, and benefits of employment.

The plaintiff must also plead a harm that treats him or her worse *because* of his protected trait. *Id.* ("the statute targets practices that 'treat[] a person worse' because of[…]protected trait").  Here, the Policy's testing requirement was not imposed on Plaintiff *because* of his religion. The Policy was implemented for all agency staff "who are assigned to work at the workplace," not limited to those who shared Plaintiff's Catholic religion.

---

[2] Plaintiff also answered generally that the adverse employment action was "everything that was mandate[d] from those who did not wish to reveal their protected health information to MDHS." (Exhibit M.)

(Exhibit G.) Plaintiff was not treated worse because of his religion, because he was treated the same as all other DHS employees who worked onsite.

Plaintiff did not request an accommodation for his religious beliefs and was not subject to any adverse employment action because of the objection, therefore he fails to satisfy the third prong of the *Jones* test.

For the foregoing reasons, Plaintiff's religious discrimination claim fails.

### C.      Implementing Plaintiff's Articulated Accommodation on Patients and Other Employees Would Impose an Undue Hardship on DHS.

Even if Plaintiff established a *prima facie* case (he did not), Plaintiff was offered and accepted a reasonable accommodation to remain unvaccinated and to also excuse Plaintiff from testing would have imposed an undue hardship on Defendant.

Once a plaintiff has established a *prima facie* case, the burden shifts to the employer to show that it offered the plaintiff a reasonable accommodation or that accommodating the plaintiff would result in an undue hardship. *See Wilson v. U.S. W. Commc'ns*, 58 F.3d 1337, 1340 (8th Cir. 1995); *Seaworth v. Pearson,* 203 F.3d 1056, 1057 (8th Cir. 2000); *see also Harrell v. Donahue,* 638 F.3d 975, 978–79 (8th Cir. 2011).

### III.      DEFENDANT OFFERED (AND PLAINTIFF ACCEPTED) A REASONABLE ACCOMMODATION TO RECEIVING THE VACCINATION: HE WAS TESTED.

As a provider of direct care and treatment to vulnerable adults, DHS encouraged its employees to receive a Covid-19 vaccination to protect both patients and staff. However, if employees did not want to receive the vaccine, DHS permitted them to test weekly. Plaintiff accepted this reasonable accommodation and signed a consent form to weekly test without notifying DHS that testing conflicted with his religious beliefs. (Zarn Dep. 78;

Exhibit J.) An employer's reasonable accommodation need not match the employee's preferred accommodation. *Haliye v. Celestica Corp.*, 717 F. Supp. 2d 873, 879 (D. Minn. 2010) ("Moreover, an employer is required to offer *a* reasonable accommodation, not the accommodation preferred by the employee. Thus, if the employer has offered one reasonable accommodation, the employee cannot insist on a different reasonable accommodation, even if the preferred accommodation would not inflict undue hardship on the employer."). An accommodation is reasonable as a matter of law if it successfully eliminates a religious conflict. *Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1031 (8th Cir. 2008) ("The Court concluded that "requiring respondent to take unpaid leave for holy day observance" would be a reasonable accommodation if applied in a religion-neutral manner because "[t]he provision of unpaid leave eliminates the conflict between employment requirements and religious practices.") (citing *Ansonia Board of Education v. Philbrook,* 479 U.S. 70, 107 (1986).).

The testing alternative offered by the Policy eliminated the conflict between Plaintiff's objection to the vaccine and DHS' request to take the vaccine, therefore the testing was a reasonable accommodation to Plaintiff's objection to the vaccine.

### A. Excusing Plaintiff from weekly testing would have imposed an undue hardship on DHS.

Plaintiff's Title VII claim alternatively fails because any accommodation from weekly testing would result in an undue burden. If a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show that they offered the plaintiff a reasonable accommodation, *Wilson*, 58 F.3d at 1340, or that accommodating the plaintiff would result

in an undue hardship. *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam); *see also Harrell v. Donahue*, 638 F.3d 975, 977 (8th Cir. 2011).

When determining whether an accommodation would impose an undue hardship, courts should consider "all relevant factors," including "the particular accommodations at issue and their practical impact in light of the nature, size, and operating cost of an employer." *Groff v. DeJoy*, 600 U.S. 447, 470-71 (2023) (alterations and internal quotation omitted). This is a fact-intensive inquiry. *Id.*

It is "well-established that, by identifying and isolating infected individuals, regularly testing individuals for COVID-19 infection can be an effective method for reducing virus transmission." COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 FR 61402-01 (Nov. 5, 2021). DHS determined that unvaccinated individuals posed a greater likelihood of transmitting COVID-19 and adopted the Policy to protect its clients, employees, and the members of the public employees are required to come into contact with as part of their job, by encouraging employees to get vaccinated against COVID-19 or regularly test. (Exhibit G.)

In analyzing an undue hardship, "[c]osts to be considered include not only direct monetary costs but also the burden on the conduct of the employer's business – including, in this instance, the risk of the spread of COVID-19 to other employees or to the public." Equal Employment Opportunity Commission, What You Should Know About COVID-19 and the ADA, Rehabilitation Act, and Other EEO Laws, § L at L.2, EEOC, (https://perma.cc/R67U-5ZMX). Here, the risk of spread to DHS patients and its

employees shows that exempting Plaintiff from the policy entirely constitutes an undue hardship.

Plaintiff's position requires that he interact directly with patients, serves them meals and maintains security. (Exhibit F; Zarn Dep. 10.) His interactions with patients sometimes involve being within six feet of them physically, including sitting at a table, or occasionally holding them. (Zarn Dep. 14-15.)

Allowing Plaintiff to work completely exempted from the Policy would have endangered other employees and required them to accept less favorable working conditions by working with Plaintiff who was at higher risk of transmitting COVID-19. *Groff*, 600 U.S. at 475-476 (Sotomayor, J., concurring) ("Because the 'conduct of [a] businesses plainly includes the management and performance of the business's employees, undue hardship on the conduct of a business may include undue hardship on the business's employees…. Indeed, for many businesses, labor is more important to the conduct of the business than any other factor."); *see also Opuku-Boateng v. California*, 95 F.3d 1461, 1468 (9th Cir. 1996) ("[A]n employer may also show hardship on the plaintiff's coworkers."). Allowing an employee who was not vaccinated and not testing in the workplace constitutes an undue hardship. *See, e.g.*, *Lee v. Seasons Hospice*, No. 22-CV-1593 (PJS/DJF), 2023 WL 6387794, at *3 (D. Minn. Sept. 29, 2023) (finding any accommodation that would have allowed plaintiffs to continue working while unvaccinated would have caused undue hardship), citing *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (per curiam); *Kushner v. N.Y.C. Dep't of Educ.*, No. 22-cv-5265-DLI-VMS, 2023 WL 6214236, *5 (E.D.N.Y. Sept. 25, 2023) ("It is beyond cavil that safety within

any work environment … is of absolute importance.... [C]reating a health and safety risk that would have prevented the DOE from fostering a safe educational and work environment ... alone would have established an undue hardship….").

Numerous courts have found the possibility of an unvaccinated individual getting others sick to be a non-speculative risk that a court may consider when performing an undue hardship analysis. *See, e.g.*, *Does 1-6 v. Mills*, 16 F.4th 20, 36 (1st Cir. 2021) (employer need not exempt workers from vaccine mandate because doing so would be an undue hardship); *EEOC v. GEO Grp., Inc.*, 616 F.3d 265, 273 (3rd Cir. 2010) (undue hardship found where religious accommodation "create[d] a genuine safety or security risk"); *Wilson v. U.S. West Commc'ns*, 58 F.3d 1337, at 1341–42 (8th Cir. 1995) (undue hardship found where employee's religious beliefs were imposed on coworkers and disrupted the workplace); *Brener v. Diagnostic Center Hospital*, 671 F.2d 141, 146–47 (5th Cir. 1982) (undue hardship found where employees were "compelled to accept less favorable working conditions"); *Leigh v. Artis-Naples, Inc.*, No. 2:22-CV-606-JLB-NPM, 2022 WL 18027780, at *11 (M.D. Fla. Dec. 30, 2022) (finding exemptions to employer's COVID-19 vaccine policy may have unfairly imposed plaintiffs' religious beliefs on other employees who complied with the vaccine policy); *Dennison v. Bon Secours Charity Health Sys. Med. Grp.*, P.C. No. 22-CV-2929 (CS), 2023 WL 3467143, *6 n.7 (S.D.N.Y. May 15, 2023) ("[T]here is also the obvious hardship associated with the increased health and safety risk posed to other employees and patients by allowing Plaintiffs to remain unvaccinated while working at their respective facilities ...."); *see also D'Cunha v. Northwell Health Sys.*, No. 1:22-cv-0988 (MKV), 2023 WL 2266520, *3 (S.D.N.Y. Feb.

19

28, 2023) (dismissing Title VII claim because reporting to a worksite unvaccinated "posed 'an unacceptable health and safety threat to patients, coworkers, and visitors'"); *Aukamp-Corcoran v. Lancaster Gen. Hosp.*, No. 19-5734, 2022 WL 507479, *6 (E.D. Pa. Feb. 18, 2022) (considering the risk of unvaccinated plaintiff getting others sick); *Robinson v. Children's Hosp. Boston*, No. 14-10263, 2016 WL 1337255, *9 (D. Mass. Apr. 5, 2016) (same); *O'Hailpin v. Hawaiian Airlines, Inc.*, 583 F. Supp. 3d 1294, 1309–10 (D. Haw. 2022) (considering the "increased risk that unvaccinated employees in close quarters pose to other employees and passengers"); *Barrington v. United Airlines, Inc.*, 566 F. Supp. 3d 1102, 1109 (D. Colo. 2021) (considering risk of unvaccinated employee getting others sick when deciding Title VII undue hardship); *Together Emps. v. Mass Gen. Brigham Inc.*, No. CV 21-11686-FDS, 2021 WL 5234394, at *17 (D. Mass. Nov. 10, 2021) (finding permitting unvaccinated employees to work without otherwise attempting to control the spread of COVID-19 in the workplace "would materially increase the risk of spreading the disease and undermine public trust and confidence in the safety of its facilities"). These cases all provide that increased risk of infecting other employees can be considered in deciding an undue hardship under Title VII. Although these decisions were issued before *Groff*, they remain persuasive post-*Groff* because they do not rely on a de-minimis cost in finding undue hardship.

EEOC guidance similarly provides that coworker impact can constitute undue hardship. *See, e.g.*, https://www.eeoc.gov/religious-discrimination (last accessed July 24, 2024) (an accommodation may cause undue hardship if it "compromises workplace safety" or "infringes on the rights of other employees," or "requires other employees to unwillingly

do more than their share of potentially hazardous … work"); *see also* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination (last accessed July 24, 2024) at § 12-IV(B)(4) (undue hardship found where religious accommodation causes disruption at work); *Groff*, 600 U.S. at 471 (noting a good deal of EEOC guidance in this area is sensible and will, in all likelihood, be unaffected by its clarification of undue hardship).

## IV.    PLAINTIFF'S ADA UNLAWFUL EXAMINATION CLAIM (COUNT III) FAILS.

The ADA prohibits an employer from requiring a medical examination or inquiring about an employee's disability status "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "This provision applies to all employees, regardless of whether the employee has an actual disability." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). Plaintiff's claim fails because he was not subject to a medical examination and DHS did not inquire into his disability status.

A "medical examination" is defined by the EEOC as "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Bates v. Dura Auto. Sys., Inc.*, 767 F.3d 566, 574 (6th Cir. 2014) (quoting EEOC Enforcement Guidance); *see also Colson v. Hennepin Cnty.*, No. 22-CV-2041 (WMW/LIB), 2023 WL 8603125, at *3 (D. Minn. Dec. 12, 2023). "A disability-related inquiry is 'a question or a series of questions that is likely to elicit information about a disability, such as asking an employee whether he or she has a disability,' such as . . . asking for medical documentation about a disability, or asking broad questions about the employee's impairments that are likely to

elicit information about a disability." *Kehren v. Olmsted Med. Ctr.*, No. 22-cv-1560 ADM/JFD, 2023 WL 2776094, at *6 (D. Minn. Apr. 4, 2023) (quoting EEOC, Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees Under the ADA (July 27, 2000), https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employees#4).

DHS's testing requirement did not violate the ADA because it does not elicit information about a disability. *See Aronson v. Olmsted Med. Ctr.*, 668 F. Supp. 3d 843, 854 (D. Minn. 2023) (holding a COVID-19 testing requirement is not likely to reveal a disability).

In *Aronson*, the Olmstead Medical Center (OMC) adopted a policy requiring its employees to be vaccinated against Covid-19 or submit to weekly testing. *Id.* at 849. Aronson was formerly employed by OMC as a diagnostic medical sonographer. *Id.* In ruling on OMC's motion to dismiss an ADA medical examination claim, the court in *Aronson* concluded that to the extent the plaintiff alleged a vaccine requirement violated § 12112(d)(4)(A), the allegation failed to state a claim because "a vaccine is not a procedure that seeks information about Aronson's health and is not an inquiry into whether Aronson has a disability." *Id.* at 854.

Regarding OMC's vaccine policy's requirement that employees who had not been vaccinated would be tested weekly for Covid-19, the court concluded likewise that "such testing does not amount to an unlawful medical examination." *Id.* (citing *McCone v. Exela Techs., Inc.*, No. 6:21-CV-912, 2022 WL 801772, at *4 (M.D. Fla. Jan. 14, 2022)); *see also*

22

*McCone*, 2022 WL 801772, at *4 ("[B]eing infected with COVID-19, standing alone, does not meet the ADA's definitions of disability or impairment. Therefore, a COVID-19 test is not 'likely to reveal a disability.'" (quoting *Harrison v. Benchmark Electronics Huntsville, Inc.,* 593 F.3d 1206, 1215 (11th Cir. 2010)).

Because DHS's test was not a medical examination and did not elicit information about a disability, it does not violate the ADA and Count III should be dismissed.

## CONCLUSION

The undisputed facts simply don't meet the legal standard for any discrimination of Plaintiff. There is no evidence that DHS was motivated by discriminating against Plaintiff in implementing its Covid-19 Vaccination and Testing Policy. Instead, the record shows the Policy was implemented to protect its employees (like Plaintiff) and its patients. Plaintiff never informed DHS of his religious beliefs and never suffered an adverse employment action for these beliefs, and therefore fails to satisfy the Eighth Circuit's *Jones* test. The medical exam also fails because DHS' test was not a medical examination and did not elicit information about a disability. For the foregoing reasons, Defendant respectfully requests that its motion be granted.

### *PLEASE SEE FOLLOWING PAGE FOR SIGNATURE*

Dated: August 7, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


s/ Ian Taylor, Jr.
AMANDA PRUTZMAN (0389267)
IAN TAYLOR, JR. (0401548)
Assistant Attorneys General

445 Minnesota Street, Suite 1400
St. Paul, MN 55101-2131
(651) 757-1348 (Voice)
(651) 282-5832 (Fax)
ian.taylor@ag.state.mn.us
amanda.prutzman@ag.state.mn.us

ATTORNEYS FOR DEFENDANT

|#5683034-v1