UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BENJAMIN ZARN,

    Plaintiff,

v.

MINNESOTA DEPARTMENT OF
HUMAN SERVICES,

    Defendant.

**MEMORANDUM OF LAW & ORDER**
Civil No. 22-cv-1756 (MJD/DJF)

Gregory M. Erickson and Vincent J. Fahnlander, Mohrman, Kaardal, & Erickson, PA, Counsel for Plaintiff.

Amanda E. Prutzman and Ian Wesley Taylor, Jr., Minnesota Attorney General's Office, Counsel for Defendant.

## I.    INTRODUCTION

This dispute arises from Defendant Minnesota Department of Human Services's ("DHS") response to the COVID-19 Pandemic. Plaintiff Benjamin Zarn alleges that policies implemented by DHS discriminated against him and violated his rights under Title VII and the Americans with Disabilities Act ("ADA"). Before the Court is DHS's Motion for Summary Judgment. (Doc. 36.) For the reasons stated below, the Court grants the motion.

1

## II. BACKGROUND

In 2018, DHS employed Zarn as a Forensic Support Specialist at St. Peter Regional Treatment Center. (Zarn Dep., Doc. 40-1, at 10:02-10:10.) His work responsibilities required Zarn to interact directly with patients. (Id. at 12:19-18:21.) Zarn worked for DHS throughout the COVID-19 Pandemic and continues to be employed by DHS to this day. (Id. at 18:22-23:23.) In September 2021, DHS adopted several policies aimed at addressing the spread of the virus within its facilities.

### A. COVID-19 Proof of Vaccination and Testing Policy

DHS adopted the COVID-19 Proof of Vaccination and Testing Policy implemented by the Minnesota Department of Management and Budget that required employees to submit proof of their vaccination status. (COVID-19 Proof of Vaccination and Testing Policy, Doc. 40-7, at 1; Notice to Contractors and Vendors, Doc. 44-7, at 1-2.) If an employee declined to be vaccinated, the employee could choose to undergo weekly testing for COVID-19 instead. (COVID-19 Proof of Vaccination and Testing Policy at 4.) The policy also stated that employees who refused to test weekly could be subject to discipline, including termination. (Id.)

Zarn believed getting the COVID-19 vaccine and weekly testing violated his Roman Catholic beliefs. (Zarn Dep. at 36:23-39:24; 83:23-25.) Despite this, Zarn signed an agreement to undergo weekly testing because he felt he had no choice but to abide by the policy, given the possible disciplinary action that could follow if he refused. (Id. at 37:22-41:13.; see also Zarn's COVID-19 Vaccine Attestation and Testing Consent Forms, Doc. 44-8, at 1-4.) Zarn unsuccessfully sought an accommodation from the testing requirement and continued to test until DHS rescinded the policy. (Zarn Dep. at 47:16-48:01.)

   B.   "COVID-19 Pay" Policy

DHS also issued another policy that provided "COVID Pay" to those individuals who received the vaccine but still contracted COVID-19. (COVID-19 Pay Policy, Doc. 44-11, at 1.) If a vaccinated individual contracted COVID-19 and exhausted their sick leave accruals, this policy allowed the employee to use paid administrative leave to isolate from others. (Id.) This policy only applied to individuals who were considered fully vaccinated from COVID-19. (Id. at 2.) Zarn believed this policy discriminated against his beliefs, but he never made a request for COVID Pay. (Zarn Dep. at 72:16-18.)

### C. Case History

In March 2022, Zarn filed a charge with the Equal Employment Opportunity Commission ("EEOC") against DHS, arguing DHS discriminated against his religious views by requiring "all employees to be fully vaccinated for [COVID-19] or be subjected to weekly [COVID-19] testing." (Doc. 40-11 at 1.) In May 2022, Zarn filed another EEOC charge, contending that DHS's policy requiring him to be vaccinated or undergo weekly testing also discriminated against him based on disability in violation of the ADA. (Doc. 40-12 at 1.) Subsequently, the EEOC reviewed the charges and determined it would not investigate. (Doc. 40-15 at 1; Doc. 40-16 at 1.) The EEOC also provided Zarn with Right-to-Sue Letters for these claims. (Doc. 40-15 at 1; Doc. 40-16 at 1.)

In May 2022, DHS modified its COVID-19 Proof of Vaccination and Testing Policy and Zarn was no longer subject to weekly testing. This lawsuit followed in July 2022. Zarn alleges DHS, by not allowing him to be exempt from the testing requirement and denying him COVID Pay, violated Title VII of the Civil Rights Act, 42 U.S.C. § 2000e; the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01; the Americans with Disabilities Act, 42 U.S.C.

4

§ 12112(d)(4)(a); and that DHS committed a "Wrongful Violation of [the] Minnesota Refusal of Treatment Statute," Minn. Stat. § 12.39.  (Compl. ¶¶ 42-53.)

On October 19, 2022, the Court dismissed Zarn's MHRA and Wrongful Violation of Minnesota Refusal of Treatment Statute claims.  (Doc. 26.)  At issue now is DHS's Motion for Summary Judgment on Zarn's remaining claims—the Title VII and ADA claims.

## III.   DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case."  Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

A party asserting a fact is disputed must cite to "particular parts of materials in the record." Neylon v. BNSF Ry. Co., 968 F.3d 724, 730 (8th Cir. 2020) (citing Fed. R. Civ. P. 56(c)(1)(A) and noting that plaintiff failed to cite evidence supporting his statement). The nonmoving party's allegations must be supported by "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." Mann v. Yarnell, 497 F.3d 822, 825 (8th Cir. 2007) (cleaned up) (quotation omitted).

DHS moves for summary judgment against Zarn's remaining claims. First, DHS argues Zarn's COVID-19 Pay Policy claims should be dismissed because Zarn failed to exhaust his administrative remedies. Second, DHS avers it is entitled to judgment as a matter of law on Zarn's Title VII claim because Zarn is unable to show DHS was aware that Zarn had a religious conflict with weekly testing or that Zarn suffered an adverse action based on his beliefs. As a result, Zarn is unable to make a prima facie case of discrimination under Title VII. Finally, DHS contends it is entitled to summary judgment on Zarn's ADA claim because COVID-19 testing is not covered by the ADA. Each argument is addressed in turn.

### B. COVID-19 Pay Policy Claims

#### 1. Exhaustion of Administrative Remedies

As a threshold issue, the Court must determine whether the COVID-19 Proof of Vaccination and Testing Policy and the COVID-19 Pay Policy are so related that DHS would have had notice of the COVID-19 Pay Policy claims through Zarn's EEOC charges.

Both Title VII and the ADA require a plaintiff to "provide[ ] the EEOC the first opportunity to investigate discriminatory practices and enable[ ] it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts." Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 222 (8th Cir. 1994). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice," with its own exhaustion requirement. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (internal quotation omitted). However, a "plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." Nichols v. American Nat'l Ins. Co., 154 F.3d 875, 887 (8th Cir. 1998) (internal citations omitted).

"[A]n EEOC complaint need not specifically articulate the precise claim." Humphries v. Pulaski Cnty. Special Sch. Dist., 580 F.3d 688, 697 (8th Cir. 2009). But the EEOC charge must provide information that would "give the employer notice of the subject matter of the charge and identify generally the basis for a claim." Fair v. Norris, 480 F.3d 865, 866 n.2 (8th Cir. 2007).

DHS argues the COVID-19 Pay Policy claims should be dismissed because Zarn failed to exhaust his administrative remedies before bringing them. (Doc. 38 at 10.) Zarn contends that any discrimination arising from the COVID-19 Pay Policy is encompassed within the COVID-19 Proof of Vaccination and Testing Policy charges. (Doc. 43 at 10.)

The Court finds that Zarn failed to exhaust his administrative remedies because the policies refer to two different aspects of DHS's response to the COVID-19 Pandemic. The EEOC charges filed by Zarn only reference his conflict with DHS's "vaccination and testing requirement." (Docs. 40-11 at 1; 40-12 at 1.) Thus, Zarn would not have given DHS notice of the discrimination arising from the COVID-19 Pay Policy in his EEOC charges.

Zarn by his own admission never made a request for COVID Pay under the relevant policy. (Zarn Dep. at 72:16-18.) The record also lacks any evidence

8

that Zarn discussed the discriminatory nature of COVID Pay with anyone at DHS. (Id.)  Additionally, those who wished to request COVID Pay must have exhausted their sick leave accruals before making a request.  (COVID-19 Pay Policy at 1.)  The record is void of any information that Zarn exhausted his sick leave accruals.  As such, it is unclear if Zarn would have even qualified to request COVID Pay.

In summary, even if the Court "liberally construe[s]" Zarn's administrative charges for exhaustion, the charges fail to encompass the discrimination arising from the COVID-19 Pay Policy.  Parisi v. Boeing Co., 400 F.3d 583 (8th Cir. 2005) ("[T]here is a difference between liberally reading a claim which lacks specificity, and inventing, ex nihilo, a claim which simply was not made" (internal citation omitted)).  Zarn therefore failed to exhaust his administrative remedies regarding his COVID-19 Pay Policy claims.  Accordingly, the Court grants DHS summary judgment on Zarn's COVID-19 Pay Policy claims.

    C.    **COVID-19 Proof of Vaccination and Testing Policy**

        1.    **Title VII**

Zarn alleges DHS violated Title VII under the theories of religious discrimination and failure to accommodate.  To establish a prima facie case of

9

religious discrimination and failure to accommodate, an employee must show he "(1) has a bona fide religious belief that conflicts with an employment requirement, (2) informed the employer of such conflict, and (3) suffered an adverse employment action." Ollis v. HearthStone Homes, Inc., 495 F.3d 570, 575 (8th Cir. 2007); Ringhofer v. Mayo Clinic, Ambulance, 102 F.4th 894, 900 (8th Cir. 2024) (citing Jones v. TEK Indus., Inc., 319 F.3d 355, 359 (8th Cir. 2003)).

At this stage in the proceedings, the Parties do not dispute whether Zarn has a bona fide religious belief. Rather, DHS contends that Zarn failed to establish a prima facie case (1) because Zarn failed to inform DHS of a conflict and (2) because Zarn failed to show he suffered an adverse employment action.

### a. Informing Employer

Zarn failed to show that DHS was informed of his religious conflict with the COVID-19 Proof of Vaccination and Testing Policy's testing requirement.

Where protected status is not obvious, "the employee must show that the employer was sufficiently aware of the employee's status to have been capable of discriminating based on it." Hunter v. United Parcel Serv., Inc., 697 F.3d 697, 703 (8th Cir. 2012) (internal citations omitted).

DHS argues it was not aware that Zarn required an accommodation to testing because Zarn never notified DHS of his religious conflict to the testing requirement. (Doc. 38 at 11.) Zarn claims he informed DHS of his religious conflict to weekly testing on at least three occasions. (Doc. 43 at 25-27.) Zarn refers to: (1) a conversation with his supervisor, Robbie Bach; (2) his communications to DHS through his union president, Ryan Cates; (3) his email exchange and conversations with the Minnesota Management and Budget Commission and subsequent inquiry about filing a hostile work environment complaint. Each instance is addressed in turn.

### i. Supervisor Robbie Bach

Zarn failed to show that DHS was notified of his religious conflict through his conversations with Robbie Bach. Bach testified she "did not understand [Zarn's] concerns about the testing policy or COVID mitigation efforts in relation to his religion." (Bach Dep. at 51:06-20.) She stated "[H]e was never really straightforward with [her]." (Id.) If she believed Zarn notified her of his religious conflict, she "would have let HR know." (Id.) Overall, Bach's testimony provides that Zarn informed Bach that Zarn believed the COVID-19 Proof of Vaccination and Testing Policy was unfair—her testimony however does

11

not show that Zarn informed her of his religious conflict with weekly testing. (Id. at 44:08-24, 73:01-74:08, 75:09-13.) At best, the record reflects that Zarn informed Bach that he objected to testing, but not that his objections were based on his religious beliefs.

### ii.    Union President Ryan Cates

Zarn's communications through Ryan Cates also failed to notify DHS of his religious conflict with testing. Zarn claims that he made an accommodation request through Cates, but Cates admitted he never made a request on Zarn's behalf. Rather Cates only sought clarification about exemptions from the COVID-19 Proof of Vaccination and Testing Policy for Zarn. (Cates Dep. at 29:03-15.)

After communicating with DHS, Cates informed Zarn there were "religious exemptions for vaccinations, but testing was just part of the vaccination policy." (Id. at 20:8-15; see also Doc. 45-11 (message on Facebook of Cates informing Zarn that DHS is "supposed to allow religious exemption for the vaccine but not testing.")) Nowhere in his deposition did Cates provide that he informed DHS that Zarn had a religious conflict to the testing requirement. To request a religious exemption, Cates stated he would have referred Zarn to

12

DHS's Equal Opportunity and Access Division ("EOAD"). (Id. at 29:14-20.) Simply seeking clarification on the policy would be insufficient to put DHS on notice that Zarn had a religious conflict with the testing requirement—especially, where Zarn signed an agreement to undergo weekly testing.

### iii.   Minnesota Management and Budget Commission

Likewise, Zarn's communications with the Minnesota Management and Budget Commission ("MMBC") failed to show he communicated his religious conflict with testing to DHS. In an August 2021 email, Zarn contacted the MMBC regarding his concerns about the COVID-19 Vaccine and Weekly Testing Policy. (Doc. 45-12 at 1-4.) The email communication did not mention his religious objection to testing. (See id.) Zarn then spoke with someone from the MMBC on the phone, but there is no indication whether Zarn requested an accommodation from testing with this individual. (Id.) Moreover, the MMBC is a separate entity from DHS. Even if Zarn did communicate his request, the record lacks any information as to how this informed DHS of the religious conflict.

Following this conversation, Zarn emailed DHS's HR team on how to make a hostile work environment complaint. (Doc. 45-8.) The record lacks any

specifics of this complaint. Zarn admitted he filed the hostile work complaint as an alternative to seeking an accommodation request because he believed any religious exemption request would be denied. (Zarn Dep. 63:18-64:14.) Thus, it is unclear how this complaint would have informed DHS of Zarn's conflict with the testing requirement.

Ultimately, the Court concludes that Zarn fails to show that he informed DHS of his religious conflict with the testing requirement.

### b. Adverse Employment Action

Zarn also fails to show he suffered an adverse employment action. The United States Supreme Court recently held that a plaintiff's claimed injury no longer needs to be "significant" to show an adverse employment action in a Title VII action. Muldrow v. City of St. Louis, 144 S. Ct. 967, 975 (2024). Rather a plaintiff must show only that the action in question "brought about some disadvantageous change in an employment term or condition." Id. (internal quotation omitted). "[T]he denial of a requested religious accommodation absent a showing of undue hardship may itself constitute an adverse action." Cole v. Grp. Health Plan, Inc., 105 F.4th 1110, 1114 (8th Cir. 2024).

The only adverse employment action that Zarn alleged was that he was required to undergo weekly testing against his religious beliefs. As Zarn never informed DHS of his religious conflict, DHS could not have denied his religious accommodation request. As such, the Court also concludes that Zarn did not suffer an adverse employment action.

### c. Summary

Much of Zarn's argument appears to conflate his religious conflict with the COVID-19 vaccine and his conflict with the weekly testing requirement. It is undisputed that Zarn was not required to get the vaccination. Thus, to be exempt from the COVID-19 Vaccine Attestation and Testing Policy, Zarn needed to establish that DHS was aware of his religious conflict with testing. Zarn however failed to direct the Court to evidence that DHS was informed of such conflict. See Johnson v. Angelica Unif. Grp., Inc., 762 F.2d 671 (8th Cir. 1985) (affirming judgment in favor of the employer in a Title VII claim because the employee did not sufficiently inform his employer of his conflict).

When viewing the evidence in the light most favorable to Zarn, the record reflects that Zarn agreed to undergo weekly testing as an alternative to getting the vaccine. Zarn then expressed his general discontent to his supervisor about

the COVID-19 Vaccine Attestation and Testing Policy, sought clarification about the policy through his union president, and discussed his concerns with someone from MMBC then submitted a complaint to DHS's HR department following that conversation. Importantly, when asked if he made a religious accommodation request to DHS, Zarn admitted that he did not directly do so. (Zarn Dep. 61:12-20.) Thus, DHS was not aware of his religious conflict with testing and Zarn did not suffer an adverse employment action.

In summary, Zarn failed to point to "sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." Mann, 497 F.3d at 825. There is no genuine dispute as to any material fact because no reasonable jury could find that Zarn informed DHS of his religious conflict with the testing requirement. As such, Zarn cannot establish a prima facie case of religious discrimination and failure to accommodate. The Court therefore grants summary judgment to DHS on this Title VII claim.

### 2. ADA

Under the ADA, an employer "shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an

individual with a disability. . . unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). "This provision applies to all employees, regardless of whether the employee has an actual disability." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007).

DHS contends Zarn failed to show how the testing requirement would elicit any information on disability status. (Doc. 38 at 21-23.) Zarn does not attempt to explain how an inquiry into vaccination status or weekly testing could reveal a disability. (Doc. 43 at 35-37.) Rather, Zarn primarily argues that DHS cannot show a business necessity for weekly COVID-19 testing. (Id.)

Courts in this district have repeatedly dismissed similar ADA claims, finding that subjecting employees to COVID-19 vaccination and testing does not constitute an "unlawful medical examination" under the ADA. See, e.g., Lee v. Seasons Hospice, 696 F. Supp. 3d 572, 587 (D. Minn. 2023) (explaining how COVID-19 mandates and testing policies do not disclose a disability status); Brokken v. Hennepin Cnty., No. CV 23-1469 (JRT/DJF), 2024 WL 1382150, at *7 (D. Minn. Mar. 29, 2024) (granting a motion to dismiss a similar ADA claim against defendant's vaccine mandate and testing policy); Kehren v. Olmsted Med. Ctr., No. 22-cv-1560 ADM/JFD, 2023 WL 2776094, at *6 (D. Minn. Apr. 4,

2023) (same).  As in these other cases, it is unclear how DHS's COVID-19 Proof of Vaccination and Testing Policy could reveal a disability status.

Accordingly, The Court grants DHS's Motion for Summary Judgment on Zarn's ADA claims.

## IV.   ORDER

Based on the foregoing reasons, as well as the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment **[Doc. 36]** is **GRANTED.**

2. Plaintiff's remaining claims are **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  January 21, 2025         s/Michael J. Davis
                                 Michael J. Davis
                                 United States District Court